UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THE SECRETARY OF THE U.S. DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT,

                              Plaintiff,

           -against-

NASSAU COUNTY PUBLIC ADMINISTRATOR AS
ADMINISTRATOR OF THE ESTATE OF ELLA MAE
KEY a/k/a MAE KEY, deceased, UNITED STATES OF
AMERICA o/b/o INTERNAL REVENUE SERVICE,
NEW YORK STATE DEPARTMENT OF TAXATION
AND FINANCE, DEBRA MOSES, ELIZABETH
LAUDERDALE, RUTH KEY, OLSEN KEY, MELVIN
KEY, CHARLES EDWARD KEY, TIMOTHY A. KEY,
KENNETH KEY, ANGELA KEY, DENISE MOORE,
REGINALD KEY, NATASHA YVETTE KEY, AARON
KEY, CHAKEIRA T. KEY, GREGORY KEY, JR.,
GAREEN KEY, PEOPLE OF THE STATE OF NEW
YORK, MASS CAPITAL FUNDING, WORLD GLOBAL
CAPITAL LLC, LAST CHANCE FUNDING INC.,
EMPIRE TAX REDUCTIONS, ETR INC., BAYVIEW
GARDEN LLC, 125 SOUTH BAYVIEW AVENUE LLC,
"JOHN DOE #1–5" and "JANE DOE #1–5", said names
being fictitious, it being the intention of plaintiff to
designate any and all occupants, tenants, persons or
corporations, if any, having or claiming an interest in
or lien upon the premises being foreclosed herein,

                             Defendants.
----------------------------------------------------------------X

**REPORT & RECOMMENDATION**
19-cv-03547-DLI-SJB

**BULSARA, United States Magistrate Judge:**

      The Secretary of the U.S. Department of Housing and Urban Development ("HUD") filed this foreclosure action on June 17, 2019. (Compl. dated June 17, 2019 ("Compl."), Dkt. No. 1). The property that is the subject of the litigation is 52 Harts Avenue, Roosevelt, New York 11575. (*Id.* ¶ 38). HUD filed an Amended Complaint

naming additional Defendants on October 4, 2021. (Am. Compl. dated Oct. 4, 2021 ("Am. Compl."), Dkt. No. 35). After Defendants failed to appear and a default was entered against all of them, HUD moved for default judgement. (Mot. for Default J. dated Mar. 14, 2022 ("Mot. for Default J."), Dkt. No. 147). On June 30, 2022, the Honorable Dora Irizarry referred the motion to the undersigned for a report and recommendation. For the reasons stated below, it is respectfully recommended that HUD's motion be granted.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 25, 2008, Ella Mae Key (the "Borrower"), who is now deceased, executed a mortgage and an adjustable rate note with Geneva Mortgage encumbering 52 Harts Avenue, Roosevelt, New York 11575 (the "Subject Property") in the principal amount of $544,185. (Am. Compl. ¶ 8; Reverse Mortgage dated Apr. 25, 2008 ("Mortgage"), attached as Ex. B to Am. Compl.; Adjustable Rate Note dated Apr. 25, 2008 ("Note"), attached as Ex. B to Am. Compl.). The Mortgage and Note were signed by Ruth Key as attorney-in-fact for Ella Mae Key. (Am. Compl. ¶ 9; Mortgage at 8; Note at 3). Simultaneous with the execution of the Mortgage and Note, Ella Mae Key executed and delivered a second note and collateral mortgage in favor of HUD dated April 25, 2008. (Am. Compl. ¶ 11; Second Reverse Mortgage dated Apr. 25, 2008 ("Collateral Mortgage"), attached as Ex. C to Am. Compl.; Adjustable Rate Second Note dated Apr. 25, 2008 ("Second Note"), attached as Ex. C to Am. Compl.). The Collateral Mortgage and Second Note were also signed by Ruth Key as attorney-in-fact for Ella Mae Key. (Am. Compl. ¶ 13; Collateral Mortgage at 8; Second Note at 3).

The Mortgage was first assigned on April 25, 2008 by Geneva Mortgage to World Alliance Financial Corp. ("World Alliance"). (Am. Compl. ¶ 14; Corporation Assignment

2

of Mortgage dated Apr. 25, 2008 ("World Alliance Assignment"), attached as Ex. D to Am. Compl., at 2). World Alliance, in turn, transferred the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Bank of America, National Association on March 1, 2010. (Am. Compl. ¶ 16; Assignment of Mortgage dated May 20, 2010, effective Mar. 1, 2010 ("First MERS Assignment"), attached as Ex. E to Am. Compl., at 2). The Nassau County Clerk has records of another assignment of the Mortgage from World Alliance to MERS as nominee for Bank of America, N.A. dated November 2, 2011. (Am. Compl. ¶ 18; Assignment of Mortgage dated Nov. 2, 2011, effective Mar. 1, 2010 ("Second MERS Assignment"), attached as Ex. F to Am. Compl., at 2).[1] MERS ultimately transferred the Mortgage to HUD on August 7, 2014. (Am. Compl. ¶ 20; Assignment of Mortgage dated Aug. 7, 2014 ("HUD Assignment"), attached as Ex. G to Am. Compl., at 2–3).

Ella Mae Key died on October 13, 2013. (Am. Compl. ¶ 24; Certificate of Death dated Oct. 13, 2013, attached as Ex. A to Am. Compl.). Paragraph seven of the Note provided that in the event of death of the Borrower, the Lender may require immediate payment in full of all outstanding principal and accrued interest. (Am. Compl. ¶ 23; Note ¶ 7(A)(i)). Paragraph nine of the Mortgage provided for the same. (Mortgage ¶ 9(a)(i)). Following Ella Mae Key's death, HUD elected to declare the entire sum under the Note due and payable. (Am. Compl. ¶¶ 25–26). Accordingly, on March 21, 2014 and November 9, 2017, HUD issued an Acceleration and Notice of Intent to Foreclose. (*Id.* ¶

---

[1] The effective date on both the First and Second MERS Assignments was March 1, 2010. However, only the Second MERS Assignment reflected the correct Mortgage balance of $544,185. (Second MERS Assignment at 2). The First MERS Assignment incorrectly included a Mortgage balance of $389,025, (First MERS Assignment at 2), which HUD believes was a typographical error. (Am. Compl. ¶ 19 n.1).

3

27; Notices of Intent to Foreclose and Accelerate Mortgage Balance dated Mar. 21, 2014 & Nov. 9, 2017, attached as Ex. H to Am. Compl.).  As of January 24, 2022, the following sums were due and payable: (1) Principal: $404,162.39; (2) Accrued interest: $94,051.35; (3) Service charges: $5,810; and (4) Mortgage Insurance Premium: $34,330.66.  (Aff. of William Collins, Deputy Director of HUD ("Collins Aff."), attached as Ex. 1 to Mot. for Default J., ¶ 35).

The Mortgage is a Home Equity Conversion Mortgage ("HECM"), also known as a reverse mortgage.  (*Id.*).  As a result of the assignments of the Mortgage, HUD is the owner and holder of the Mortgage and Note and has the authority to institute a mortgage foreclosure action.  (Am. Compl. ¶ 22; Collins Aff. ¶ 28).

The original Complaint named as Defendants: The Estate of Ella Mae Key, Unknown Heirs of the Estate of Ella Mae Key, United States of America obo Internal Revenue Service, New York State Department of Taxation and Finance, "John Doe #1–5," and "Jane Doe #1–5."  (Compl. ¶¶ 32–37).  On August 2, 2019, HUD filed a motion for service of the Complaint by publication as personal service could not be effectuated against the Unknown Heirs of the Estate of Ella Mae Key.  (Mot. for Service by Publication, Dkt. No. 7; Decl. of John Manfredi in Supp. of Pl.'s Mot., attached to Mot. for Service by Publication, ¶ 6).  That motion was denied by the Court because HUD failed to proceed in New York Surrogate's Court to ascertain whether Ella Mae Key had any heirs.  (Order dated Aug. 8, 2019, Dkt. No. 9 at 7).  Over two years later, on September 28, 2021, having filed an administration petition in Nassau County Surrogate's Court, HUD sought to amend its Complaint to add new defendants.  (Aff. in Supp. of Mot. to Amend dated Sept. 28, 2021, attached as Ex. 1 to Mot. to Amend, Dkt.

4

No. 33, ¶¶ 6, 15). The Amended Complaint was subsequently filed, with leave of the Court, on October 4, 2021. (Am. Compl.; Order dated Sept. 30, 2021).

The Nassau County Public Administrator is named as a defendant in the Amended Complaint as, in its capacity as Administrator of The Estate of Ella Mae Key aka Mae Key, deceased, it is the record owner and obligor under the Note secured by the Mortgage. (Am Compl. ¶ 34; Decree Granting Limited Administration dated Aug. 19, 2021, attached as Ex. I to Am. Compl.). Also named as defendants are the 16 heirs of Ella Mae Key and ten possible subordinate lienors. (Am. Compl. ¶¶ 35–60). Finally, the Amended Complaint also includes "John Doe #1–5" and "Jane Doe #1–5" those names being fictious, but intending to designate possible additional tenants, occupants, or other persons, if any, having or claiming any estate or interest in the Subject Property. (*Id.* ¶ 61).

Between October 6, 2021 and December 30, 2021, each Defendant—except for the unidentified John Doe parties—was served with a summons and the Amended Complaint. (Summonses Returned Executed, Dkt. Nos. 38–59, 61, 80, 93, 135, 143). None of the Defendants appeared in the case, all failed to answer, and, as a result, the Clerk of Court entered default against each of them between December 20, 2021 and January 26, 2022. (Entries of Default, Dkt. Nos. 66, 67, 100–114, 127–32, 138, 139, 142, 146).

On March 14, 2022, HUD filed a motion for default judgment against all Defendants. (Mot. for Default J.). Pursuant to Local Civil Rule 55.2(c), HUD mailed the motion papers to the last known residence of each of the 16 Individual Defendants and the last known business addresses of the remaining Defendants. (Affs. of Service dated Mar. 21, 2022, Dkt. No. 148; Aff. of Service filed Jan. 25, 2023, Dkt. No. 149

5

(establishing service of the default judgement papers was made on Individual Defendant Melvin Key on March 16, 2022)). The Honorable Dora Irizarry referred the motion to the undersigned for a report and recommendation. (Order Referring Mot. dated June 30, 2022).

## DISCUSSION

I.  Liability

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id.* R. 55(b)(2).

Whether to enter a default judgment is committed to the discretion of the district court, within the limits articulated by the Second Circuit. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits."). That is, the Second Circuit "ha[s] a strong preference for resolving disputes on the merits" and has cautioned that "a default judgment is the most severe sanction which the court may apply." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quotations omitted).

6

"A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiffs' pleading." *Mateo v. Universal Language Corp.*, No. 13-CV-2495, 2015 WL 5655689, at *4, *6–*7 (E.D.N.Y. Sept. 4, 2015) (finding defendant was not plaintiff's employer based on his testimony that contradicted allegations in the complaint), *report and recommendation adopted*, 2015 WL 5664498, at *1 (Sept. 23, 2015). For example, an allegation is not "well-pleaded" if is contradicted by other evidence put forth by the plaintiff. *See id.* at *6–*7; *Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 151 (E.D.N.Y. 2010) ("[O]nce plaintiffs provided an actual picture of the allegedly infringing pen that contradicted the allegations in the Complaint, those allegations would no longer be considered well-pleaded.").

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016). The Court must then determine "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit

7

conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

"In a mortgage foreclosure action under New York law, 'the lender must prove . . . the existence of an obligation secured by a mortgage, and a default on that obligation.'" *Gustavia Home, LLC v. Rice*, No. 16-CV-2353, 2016 WL 6683473, at *2 (E.D.N.Y. Nov. 14, 2016) (alteration in original) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997)); *see also E. Sav. Bank, FSB v. Ferro*, No. 13-CV-5882, 2015 WL 778345, at *6 (E.D.N.Y. Feb. 24, 2015). "[I]n a New York mortgage foreclosure action, a plaintiff makes a *prima facie* case . . . where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor." *CIT Bank, N.A. v. Escobar*, No. 16-CV-3722, 2017 WL 3614456, at *4 (E.D.N.Y. June 16, 2017) (quoting *E. Sav. Bank, FSB v. Bright*, No. 11-CV-1721, 2012 WL 2674668, at *3 (E.D.N.Y. July 5, 2012), *report and recommendation adopted*, 2017 WL 3634604, at *1 (Aug. 18, 2017). "[O]nce a plaintiff mortgagee in a foreclosure action has established a prima facie case . . . it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *United States v. Leap*, No. 11-CV-4822, 2014 WL 1377505, at *2 (E.D.N.Y. Feb. 18, 2014), *report and recommendation adopted*, 2014 WL 1383139, at *2 (Apr. 8, 2014).

HUD has submitted requisite documentation to establish a *prima facie* case for foreclosure. It produced the Mortgage, the Note, and has established that default occurred following the death of the sole Borrower, Ella Mae Key. Under the provisions of the Note and Mortgage, the Lender is entitled to "immediate payment in full of all outstanding principal and accrued interest." (Note ¶ 7(A)(i); Mortgage ¶ 9(a)(i)).

Further, HUD has established that through assignment it is now the "owner and holder of the Mortgage and Note." (Am. Compl. ¶ 22). Finally, neither the Nassau County Administrator—the appointed administrator of Ms. Key's estate—nor any of her 16 heirs, all of whom were named as defendants, has appeared to contest the right to foreclose. In light of the unrebutted *prima facie* case, HUD is entitled to foreclosure. *See, e.g., Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Toscano*, No. 20-CV-5998, 2021 WL 6424600, at *3 (E.D.N.Y. Dec. 20, 2021) (recommending entry of default judgment where "HUD has presented the requisite documentation to establish a *prima facie* case" and the defaulting defendants "have not made an affirmative showing to overcome the plaintiff's *prima facie* case"), *report and recommendation adopted*, 2022 WL 103678, at *1 (Jan. 11, 2022); *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Rhodie as Co-Tr. of Lornice Rhodie Revocable Living Tr.*, No. 21-CV-3165, 2022 WL 3213048, at *3 (E.D.N.Y. Aug. 9, 2022) (granting default judgment for same reasons).[2]

The Amended Complaint also names ten possible subordinate lienors as defendants. (Am. Compl. ¶¶ 35, 36, 53–60). RPAPL § 1311 provides that the necessary parties to a mortgage foreclosure action include "[e]very person having any lien or

---

[2] HUD has not established that it provided a 90-day notice prior to commencing this action in accordance with Section 1304 of the New York Real Property Actions and Proceedings Law ("RPAPL"). The 90-day notice requirements of RPAPL § 1304 are inapplicable to Ella Mae Key, who died prior to the commencement of this action, because upon her death she was not a "borrower" under the loan instrument. *See Windward Bora LLC v. Valencia*, No. 19-CV-4147, 2022 WL 872506, at *2 n.5 (E.D.N.Y. Mar. 24, 2022) (adopting report and recommendation); *United States through Farmers Home Admin., U.S. Dep't of Agric. v. Opportunities for Chenango, Inc.*, No. 18-CV-1230, 2020 WL 1025191, at *3 n.1 (N.D.N.Y. Mar. 3, 2020) ("[C]ourts have determined that the notice provision of N.Y. Real Prop. Acts. L. § 1304 does not apply to a deceased borrower because N.Y. Real Prop. Acts. L. § 1304 in particular requires the notice to be sent 'to the borrower.'" (citing *U.S. Bank, N.A. v. Levine*, 52 Misc. 3d 736, 737–38 (Sup. Ct. 2016))). And to that end, HUD was not required to serve the 90-day notices on her heirs. *Valencia*, 2022 WL 872506, at *2 n.5.

incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." RPAPL § 1311(3). Thus, "[t]he necessary parties to a foreclosure action are those whose interest is claimed to be subject and subordinate to the plaintiff's lien, such as the record owner or person having an estate or interest in the property or one holding a later lien." *Toiny LLC v. Gill*, No. 18-CV-40, 2022 WL 4118520, at *3 (E.D.N.Y. Sept. 9, 2022) (quotations omitted). This rule "derives from the underlying objective of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale." *NC Venture I, L.P. v. Complete Analysis, Inc.*, 22 A.D.3d 540, 542 (2d Dep't 2005) (quotations omitted).

"[T]o adequately allege liability as to a non-mortgagor defendant and extinguish their interest in a property, the complaint must allege 'nominal liability'—that any judgments the non-mortgagor defendant has against the mortgagor defendant, if asserted as a lien on the mortgage property, is subordinate to the plaintiff's lien." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311, 2019 WL 2233828, at *7 (E.D.N.Y. May 22, 2019) (collecting cases); *see also Toscano*, 2021 WL 6424600, at *3. "When default judgment is entered against a defendant with nominal interest in a property, that defendant's interest in the property is extinguished." *Wilmington Sav. Fund Soc'y, FSB v. White*, No. 17-CV-2288, 2019 WL 4014842, at *6 (E.D.N.Y. May 28, 2019), *report and recommendation adopted*, 2021 WL 2548971, at *5 (June 22, 2021); *see also CIT Bank, N.A. v. O'Sullivan*, No. 14-CV-5966, 2016 WL 2732185, at *9 (E.D.N.Y. May 10, 2016) ("Courts regularly enter default judgment in foreclosure actions against defendants with 'nominal interests' in the relevant property, such as

10

parties holding liens that are subordinate to the plaintiff's interest." (quotations omitted)).

Each of the ten subordinate lienors was properly served with a summons and the Amended Complaint, as well as the motion for default judgment. All failed to respond, and thereby do not contest that their interests are subordinate to that of HUD. The Court therefore finds that HUD is entitled to default judgement against them and extinguishment of any interest they may possess. *See, e.g.*, *Valencia*, 2022 WL 872506, at *4 (recommending default judgment against non-mortgagor defendants where the complaint alleged that the parties had liens subordinate to the plaintiff's); *Toscano*, 2021 WL 6424600, at *3 (same); *White*, 2019 WL 4014842, at *6 (same); *CIT Bank, N.A. v. Valerio*, No. 16-CV-6644, 2018 WL 4268913, at *8 (E.D.N.Y. Aug. 15, 2018) (same), *report and recommendation adopted*, 2018 WL 4265869, at *1 (Sept. 5, 2018); *Christiana Bank & Tr. Co. v. Dalton*, No. 06-CV-3206, 2009 WL 4016507, at *5 (E.D.N.Y. Nov. 17, 2009) (same).

II.  Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL

11

2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Gilbert*, No. 20-CV-1441, 2022 WL 344270, at *3 (N.D.N.Y. Feb. 4, 2022) ("A hearing is not necessary where the record contains detailed affidavits and documentary evidence that enables the court to evaluate the proposed sum and determine an award of damages." (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993))).

    HUD has submitted the requisite documentation to provide a basis for damages, including the affidavit of William Collins, Deputy Director, Single Family Housing, Servicing and Loss Mitigation Division of HUD. (Collins Aff.). HUD seeks a judgment of foreclosure and sale with the proceeds applied to a total amount owed of $538,244.40 as of January 24, 2022. (*See id.* ¶ 35). In addition, HUD requests reimbursement of costs that total $5,612.69. (Bill of Costs, attached as Ex. 4 to Mot. for Default J.). By virtue of their default, Defendants have not objected to HUD's calculations.

    The Court was able to confirm HUD's calculations as follows:

    As of January 24, 2022, the remaining principal of the Mortgage was $404,162.39. (Collins Aff. ¶ 35). The total accrued interest as of January 24, 2022 was

12

$94,051.35.  (*Id.*).  A monthly servicing fee was set as $35 at the time of the loan closing and is charged throughout the life of the HECM loan.  (*Id.* ¶ 37; Mortgage ¶ 5; *see* 24 C.F.R. § 206.207(b) (authorizing the mortgagee to "collect a fixed monthly charge for servicing activities of the mortgagee or servicer")).  The total service charges accrued by January 24, 2022 were $5,810.  (Collins Aff. ¶ 35).

In addition, as set forth in the Mortgage, HUD charged the Borrower, Ella Mae Key, a Mortgage Insurance Premium ("MIP").  (Mortgage ¶ 5).  The MIP for this account is "calculated at a rate of 0.500% of the balance after an initial MIP of $7,255.80 was applied to this account at closing."  (Collins Aff. ¶ 38); *see* 24 C.F.R. § 206.105(a)–(b) (mandating that the "mortgagee shall pay to the Commissioner an initial MIP that does not exceed three percent of the maximum claim amount").  The MIP as of January 24, 2022 was $34,330.66.  (Collins Aff. ¶ 35).

The sum of the four individual components—Principal, Accrued Interest, Service Charges, MIP—is $538,354.40.  Both the Collins Affidavit and the Proposed Judgment of Foreclosure and Sale state the total amount owed is $538,244.40.  (*Id.*; Proposed J. of Foreclosure and Sale ("Proposed J."), attached as Ex. 3 to Mot. for Default J., at 2).  Because a party is not required to seek all that it may be entitled to in damages, the Court only recommends that HUD be awarded the amount it seeks in its motion papers: $538.244.40.

As for costs, HUD seeks the reimbursement of $345 for filing the Notice of Pendency, $707.69 for a title search, and $4,560 in service of process fees.  (Bill of Costs).  "A plaintiff in a foreclosure action may recover . . . costs against a borrower-defendant if the note or mortgage provides for such an award."  *U.S. Bank Nat'l Ass'n v. Swezey*, No. 20-CV-91, 2022 WL 1422841, at *10 (E.D.N.Y. Mar. 24, 2022), *report and*

13

*recommendation adopted*, 2022 WL 2390989, at *1 (July 1, 2022). Both the Mortgage and Note allow for the collection of all costs by the Lender, HUD. (Mortgage ¶ 20 ("In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law[.]"); Note ¶ 7(C) ("If Lender has required immediate payment in full . . . the debt enforced through sale of the Property may include costs and expenses[.]")). HUD has provided documentation to substantiate the costs that it has incurred and for which it seeks reimbursement. (Notice of Pendency Receipts, attached as Ex. J to Mot. for Default J.; Title Search Invoices, attached as Ex. K to Mot. for Default J.; Service of Process Invoices, attached as Ex. L to Mot. for Default J.). Therefore, the Court respectfully recommends that HUD be awarded the total amount of $5,612.69 in costs. *See, e.g.*, *Rhodie*, 2022 WL 3213048, at *5 (finding that similar fees for title search, service of process, and the filing of a notice of pendency represented adequately documented and recoverable litigation costs); *Swezey*, 2022 WL 1422841, at *10 (same); *United States v. Estate of Callard*, No. 11-CV-4819, 2017 WL 685604, at *10 (E.D.N.Y. Feb. 1, 2017) (recommending an award of service of process costs incurred by attorney in foreclosure action), *report and recommendation adopted*, 2017 WL 684191, at *1 (Feb. 21, 2017).

III.   <u>Judgement of Foreclosure and Sale</u>

HUD requests that the "mortgaged premises described in the amended complaint . . . be sold . . . in one parcel, at public auction . . . and under the direction of [an appointed Master]." (Proposed J. at 2–3). By presenting the Mortgage, Note, and proof of default on those instruments as a result of Ella Mae Key's death, HUD has established a presumptive right to foreclose on the Subject Property, and no Defendant has appeared to make an affirmative showing to overcome this *prima facie* case. *See Leap*,

14

2014 WL 1377505, at *2.  In addition, HUD has proposed a Master for the conducting of the auction sale of the Subject Property.  (Proposed J. at 2–3).  The Court recommends the appointment of this Master, Heather Crosley, Esq., and that a Master fee be paid in the sum of $750 from the proceeds of the sale, as proposed by HUD.  (*Id.* at 3); *see, e.g.*, *Rhodie*, 2022 WL 3213048, at *5 (appointing Plaintiff's proposed Master and approving a $750 fee as reasonable); *Windward Bora, LLC v. Brown*, No. 21-CV-3147, 2022 WL 875100, at *7 (E.D.N.Y. Mar. 24, 2022) (same); *Gilbert*, 2022 WL 344270, at *4 (same); *Leap*, 2014 WL 1377505, at *3 (recommending same).

IV.     Dismissal Against John Doe and Jane Doe

HUD requests that John and Jane Doe defendants be dismissed.  (Aff. & Mem. of Law, attached as Ex. 2 to Mot. for Default J., ¶ 69).  HUD has determined that there are no additional tenants occupying the Subject Property and so the names John Does #1–5 and Jane Does #1–5 are no longer necessary to represent "tenants, occupants or other persons, if any, having or claiming any estate or interest in possession upon the mortgaged premises or any portion thereof." (*Id.*; Am. Comp. ¶ 61).  The Court recommends that the John Doe and Jane Doe Defendants be dismissed. *See, e.g.*, *Rhodie*, 2022 WL 3213048, at *1 n.3; *Gilbert*, 2022 WL 344270, at *4.

## CONCLUSION

For the reasons described above, the Court respectfully recommends that HUD's motion for default judgment be granted and that:

1. The District Court order the foreclosure and sale of the Subject Property located at 52 Harts Avenue, Roosevelt, New York 11575;
2. The proposed Master be appointed to conduct the sale and receive a fee in the sum of $750 from the proceeds of the sale;

15

3. HUD be awarded the account balance sought of $538,244.40 from the proceeds of the sale;

4. HUD be awarded $5,612.69 in costs;

5. HUD be awarded post-judgment interest in an amount to be calculated by the Clerk of the Court pursuant to 28 U.S.C. § 1961;

6. Defendants "John Doe #1–5" and "Jane Doe #1–5" be dismissed from this action.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

HUD is directed to serve a copy of this Report and Recommendation on all Defendants and file proof of such service on the record.

SO ORDERED.

/s/ *Sanket J. Bulsara*  February 9, 2023
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

16